UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CBS INTERACTIVE INC., | ) |
| Plaintiff, | ) ) ) |
| | ) Case No.: _____ |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, | ) ) ) |
| Defendant. | ) ) ) |

# COMPLAINT

Plaintiff, CBS Interactive Inc. ("CBS Interactive"), operating through its division CBSSports.com ("CBSSports.com"), as and for its complaint against Defendant, National League Football Payers Association ("the Players Association"), states:

## INTRODUCTION

1.  CBS Interactive, through its business division, CBSSports.com, is a leader in providing fantasy sports games to sports enthusiasts throughout the country, including in one of its top markets, Minnesota. The Players Association has threatened and continues to threaten CBS Interactive with litigation if CBS Interactive does not pay the Players Association nationwide license fees for the use of publicly available statistics. It has gone so far as to say that if CBS Interactive takes any action to challenge its right to the licensing fees, it will never again grant CBSSports.com rights necessary to operate fantasy games and will therefore put CBSSports.com out of the fantasy football business. It has taken these actions even though the Eighth Circuit has decided the exact issues in protracted litigation resolved earlier this year that

went all the way to the United States Supreme Court, and despite the fact that the Players Association actively participated in that litigation as an *amicus curiae* at both the Eighth Circuit and United States Supreme Court levels. The Players Association claims that decision does not prevent it from continuing its efforts to collect nationwide monopoly royalty fees.

2. CBS Interactive seeks a declaration and a reaffirmation that the Players Association may not seek to control the use of player statistics in fantasy games and may not continue to extract money from CBS Interactive for the use of publicly available football statistics. In this regard, the Players Association has threatened to put CBSSports.com out of the fantasy football business. This not only implicates CBSSports.com's business but also the business of the hundreds of other fantasy game operators that are put in a position of either paying unwarranted licensing fees or facing expensive litigation against the Players Association and potentially losing their business. To this end, CBS Interactive also seeks a ruling that the Players Association has been and is engaging in prohibited antitrust activity under §2 of the Sherman Act.

## THE PARTIES

3. CBS Interactive is a Delaware corporation and does business throughout the United States, including within the State of Minnesota. It is headquartered at 235 Second Street, San Francisco, California 94105, with offices in California, Florida, Kentucky, New York, Georgia, Michigan and Illinois, among others.

4. CBS Interactive operates fantasy sports games at the domain CBSSports.com. CBSSports.com is one of the leading providers of fantasy sports products and services in the United States. The organization currently offers a variety of fantasy games (e.g., commissioner style) for different sports, including football, baseball, basketball, hockey, and golf

that can be played via a variety of interactive platforms, including the Internet, Interactive TV and Mobile.

5. On information and belief, the Players Association is an unincorporated association that acts as the union for players in the National Football League, including players for the Minnesota Vikings, a National Football League franchise that plays its home games in the State of Minnesota. On information and belief, the Players Association has over 2,000 members nationwide, including members working and residing within this judicial district.

## BACKGROUND

6. Currently, participation in fantasy sports games is a multimillion dollar industry in the United States. The typical model for a fantasy sports game is one in which each participant becomes the "owner" of his/her own fantasy franchise. A mock draft occurs prior to the beginning of the professional season associated with each game. For example, prior to the start of the professional football season, a participant will form his team by drafting players from a pool of available professional football players. Players are drafted onto the participant's team based on the participant's notion that the player will perform well during the course of the football season. During the course of the season the participant may modify his or her roster by making trades with other participants or by adding new players that become available from other teams.

7. Typically, each participant or "owner" is competing against other fantasy owners within the league who have drafted their own teams. The success of one's fantasy team over the course of the football season is dependent on the chosen players' actual performances on their respective actual teams. Usually, the publicly available statistics relating to each player and team are tracked and posted to determine which fantasy team is winning, as well as to aid

participants in choosing who to play on a given day, who to trade, etc. . . . Success is based on the selection of players that are likely to yield the best statistics, which, often times, is not the most notable players. In short, it is a statistics driven game.

8. CBS Interactive has owned and operated fantasy sports games businesses since 1996. CBS Interactive offers fantasy sports games, including fantasy football, to participants throughout the United States, including to participants in the State of Minnesota.

9. CBS Interactive, through CBSSports.com currently offers a variety of fantasy games, including baseball, football, basketball, hockey, and golf. For each sport, CBSSports.com provides participants with profiles and publicly available statistics for each player so that participants can make informed decisions regarding their fantasy teams.

10. CBS Interactive had formerly entered into multiple licensing agreements with the Players Association, through its licensing entity, National Football League Player Incorporated. The most recent licensing agreement was effective on or about March 1, 2007 and expired on February 29, 2008.

11. Between the months of February and August 2008, CBS Interactive was approached by the Players Association to discuss, among other things, CBS Interactive's continued use, during the upcoming football season, of names and statistics related to professional football players. The Players Association demanded licensing fees for continued use of names and statistics related to professional football players, in which the Players Association asserted intellectual property rights.

12. Even though this very issue had recently been decided during the past year in the Eighth Circuit Court of Appeals, the Players Association informed CBS Interactive that failure to pay the demanded licensing fees would be met with litigation. The Players Association

further asserted that any party that elects to challenge the Players Association's alleged rights in the names and statistics of professional football players would be *excluded* from the fantasy football market.

13. Based on these discussions, CBS Interactive fears that it will be sued by the Players Association or that the Players Association will publicly contend that CBS Interactive is violating its rights. Specifically, the Players Association has maintained that it has exclusive ownership rights in the basic information comprising public statistics associated with the players' names and that it can therefore preclude all fantasy football sports league providers from using this basic public statistical information to provide these games to the consuming public and sports enthusiasts.

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. §§1331, 1338, 1367, 2201, and 2202, as well as, 15 U.S.C. §§1 *et seq.*, and 17 U.S.C. §§101 *et seq.*

15. On information and belief, the Players Association is an unincorporated association with members who reside in Minnesota and is subject to personal jurisdiction in this judicial district.

16. Venue is proper in this district pursuant to 28 U.S.C. §1391.

## COUNT I

**DECLARATORY JUDGMENT THAT A RIGHT OF PUBLICITY INTERPRETED BROADLY ENOUGH TO ENCOMPASS CBS INTERACTIVE'S ACTIONS IS SUPERSEDED BY THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

17. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

5

18. CBS Interactive brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of CBS Interactive and the Players Association with respect to common law and statutory rights of publicity recognized within the United States.

19. To the extent that a right of publicity recognized within the United States is violated or infringed by CBS Interactive's operation of a sports fantasy games business, the First Amendment to the U.S. Constitution supersedes the right of publicity.

## COUNT II

### DECLARATORY JUDGMENT THAT A RIGHT OF PUBLICITY INTERPRETED BROADLY ENOUGH TO ENCOMPASS CBS INTERACTIVE'S ACTIONS IS PREEMPTED BY FEDERAL COPYRIGHT LAW

20. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

21. CBS Interactive brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of CBS Interactive and the Players Association with respect to common law and statutory rights of publicity recognized within the United States.

22. To the extent that a right of publicity recognized within the United States is violated or infringed by CBS Interactive's operation of a sports fantasy games business, federal Copyright Law, which dedicates information used in a fantasy sports games business to the public, preempts the right of publicity.

## COUNT III

### DECLARATORY JUDGMENT THAT CBS INTERACTIVE DOES NOT VIOLATE ANY RIGHT OF PUBLICITY OWNED OR CONTROLLED BY THE PLAYERS ASSOCIATION

23. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

24. CBS Interactive brings this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202, as to the relevant rights, liabilities, and obligations of CBS Interactive and the Players Association with respect to any alleged right of publicity owned or controlled by the Players Association.

25. CBS Interactive's actions in operating a sports fantasy league business do not infringe any right of publicity allegedly owned or controlled by the Players Association.

## COUNT IV

### MONOPOLIZATION AND ATTEMPTED MONOPOLIZATION IN VIOLATION OF §2 OF THE SHERMAN ACT, 15 U.S.C. §2

26. Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

27. CBS Interactive provides fantasy football leagues throughout the United States, including Minnesota, in which publicly available names and statistics related to professional football players are used.

28. The creation and maintenance of fantasy football games, and the provision of related information services, constitutes a relevant product or service market. Consumers do not consider fantasy games for other sports to be a substitute for fantasy football.

29. The relevant geographic market is the United States.

30. The Players Association seeks to monopolize and has attempted to monopolize the market for creation and maintenance of fantasy football games and the provision of related information services. The Players Association seeks to extract monopoly profits from the entire industry by charging licensing fees for the use of publicly available information and, on information and belief, threatening objectively baseless litigation against businesses that do not succumb to its demands.

31. For example, between the months of February and August of 2008 CBS Interactive was contacted by the Players Association, through its representatives, to discuss, among other things, CBS Interactive's continued use, during the upcoming football season, of publicly available names and statistics related to professional football players. In this relevant time period and, for example, on or about May 21, 2008, the Players Association, through its representatives, demanded licensing fees for the continued use of the names and statistics of football players, over which the Players Association asserted intellectual property rights. Further, on or about August 6, 2008, the Players Association, through its representatives, went so far as to indicate that if CBS Interactive challenged its asserted intellectual property rights, the Players Association would refuse a license to CBS Interactive moving forward and thereby exclude CBS Interactive from the fantasy football market. In the same communication, the Players Association referred to itself as a "litigious organization."

32. During the relevant time period and through today, the Player Association knew or reasonably should have known that names and statistics related to professional football players are protected free speech under the First Amendment to the United States Constitution. *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977); *C.B.C. Distribution and Marketing, Inc. v. Major League Baseball*, 505 F.3d 818 (8th Cir. 2007). Indeed, the Players

Association actively participated as an *amicus curiae* in the case that resolved this issue at the Eighth Circuit and United States Supreme Court levels, *C.B.C. Distribution and Marketing, Inc. v. Major League Baseball*, 505 F.3d 818 (8th Cir. 2007), *cert denied*, 128 S.Ct. 2872 (2008).

33. Despite the clarity of the law on this issue, and despite its arguments having been fully considered in the recent litigation, the Players Association continues to make objectively baseless demands for licensing fees from CBS Interactive and others in the fantasy football industry. The Players Association maintains this demand even though in its briefs to the Eighth Circuit Court of Appeals and the United States Supreme Court in the above-referenced *C.B.C. Distribution and Marketing, Inc.* case, the Player Association correctly recognized that the outcome of that case would impact its ability to demand licensing fees for the use of publicly available information. For example, in its brief to the United States Supreme Court, the Players Association asserted that the "Eighth Circuit's decision has consequences for the entire fantasy sports industry," and the Players Association "will be especially hard hit by the decision below." Motion for Leave to File Amici Curiae Brief and Brief for National Football League Players Association and National Football League Players Incorporated as Amici Curiae in Support of Petitioners at pages 15 and 16.

34. Despite the above, the Players Association has continued to demand licensing fees for the use of players' names and statistics in fantasy football games throughout the United States, including within the Eighth Circuit and this judicial district. In view of the above, the Players Association's asserted ownership of, and control over, the names and statistics used in fantasy football games is objectively baseless and constitutes an unlawful monopolization and/or attempted monopolization over the relevant markets.

35. In pursuing unwarranted licensing fees in this manner, the Players Association has threatened CBS Interactive with litigation for an improper and malicious purpose, without an objectively reasonable basis in law, and with a specific intent to harm competition and monopolize the relevant markets.

36. On information and belief, the Players Association is demanding licensing fees from other fantasy football providers, and taking similar actions with other companies that are not paying the requested licensing fees. By threatening litigation, the Players Association attempts to coerce payment of licensing fees, regardless of the propriety of its assertion of rights.

37. The Players Association has thereby either succeeded in monopolizing the relevant market or has created a dangerous probability of achieving monopoly power in the relevant markets, despite the absence of any appropriate legal basis for doing so.

38. The Players Association's improper conduct threatens to reduce the availability of fantasy football games, to raise prices for fantasy football customers, to restrain the dissemination of information related to professional football, and to exclude CBS Interactive from the relevant markets. Accordingly, the Players Association, in violation of §2 of the Sherman Act, has monopolized or attempted to monopolize and continues to monopolize or attempt to monopolize the relevant markets.

39. On information and belief, as a direct result of the Players Association's illegal conduct, CBS Interactive is being injured and/or will be injured, including in spending time and money defending itself against the Players Association's baseless claim to nationwide property rights, notwithstanding the Eighth Circuit's decision. The Players Association's threats and assertion of monopoly rights also are likely to disrupt the overall market.

40. On information and belief, the Players Association's illegal conduct, unless enjoined, will continue to cause irreparable injury and loss to CBS Interactive and the entire fantasy football market, for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, CBS Interactive respectfully requests this Court to enter a judgment:

A. Declaring that, to the extent Plaintiff CBS Interactive's actions related to its business of providing and running sports fantasy teams violates any right of publicity, the First Amendment to the U.S. Constitution supersedes the right of publicity;

B. Declaring that, to the extent Plaintiff CBS Interactive's actions related to its business of providing and running sports fantasy teams violates any state law right of publicity, federal Copyright Law preempts the state law right of publicity;

C. Declaring that Plaintiff CBS Interactive's actions related to its business of providing and running sports fantasy teams do not violate any right to publicity allegedly possessed or controlled by Defendant Players Association or any business associated with the Players Association;

D. Declaring that Defendant Players Association's conduct is in violation of §2 of the Sherman Act, 15 U.S.C. §2;

E. Awarding the Plaintiff CBS Interactive, pursuant to §4 of the Clayton Act, 15 U.S.C. §15, any actual and treble damages, attorneys' fees and costs;

F. Enjoining Defendant Players Association, their agents, servants, employees, attorneys, and affiliates, and those persons or entities in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from interfering with Plaintiff CBS Interactive's business related to sports fantasy teams, either directly through action

against Plaintiff CBS Interactive or indirectly through actions against businesses who contract with Plaintiff CBS Interactive for sports fantasy team related products, or from threatening litigation or otherwise making statements that Plaintiff CBS Interactive and/or Plaintiff CBS Interactive's customers have infringed or are infringing any rights of Defendant Players Association, pursuant to §16 of the Clayton Act, 15 U.S.C. §26;

G. Awarding the Plaintiff CBS Interactive its reasonable costs and expenses, including attorneys' fees, incurred;

H. Awarding the Plaintiff CBS Interactive all pre- and post- judgment interest allowed by law; and

I. Awarding the Plaintiff CBS Interactive any other relief that this Court deems just and proper.

Dated: September 3, 2008

DORSEY & WHITNEY LLP

By /s/ Michael A. Lindsay
Michael A. Lindsay #0163466
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

*Attorneys for Plaintiff CBS Interactive Inc.*

OF COUNSEL

Rudolph A. Telscher, Jr.
HARNESS, DICKEY & PIERCE, P.L.C.
7700 Bonhomme, Suite 400
St. Louis, MO 63105
(314) 726-7500
FAX: (314) 726-7501